IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| OSWALD NIEVES and JESUS ALCANTAR, on behalf of themselves and all other persons similarly situated, known and unknown | ) ) ) ) ) |
| Plaintiffs, | ) No. 12 C 3267 ) ) The Honorable Virginia M. Kendall ) |
| v. | ) ) |
| OPA, INC. d/b/a OPA ESTIATORIO, and CHRIS GEORGES, individually, | ) ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Oswaldo Nieves and Jesus Alcantar filed suit against Defendants OPA, Inc. and Chris Georges for the Defendants' alleged violations of the Fair Labor Standards Act, 29 U.S.C. 201 *et seq*. and the Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq*. Plaintiffs have moved for a protective order to stop Defendants' alleged improper discovery tactics. Additionally, Plaintiffs ask this Court to disqualify counsel for the Defendants, Douglas Lohmar, due to his alleged ethical violations. For the reasons set forth below, this Court grants the motion in part and denies it in part.

**BACKGROUND**

The Plaintiffs filed a putative class action lawsuit against the Defendants that claims the Defendants violated the FLSA and IMWL by failing to pay them and other similarly-situated employees overtime wages. (Doc. 1.) Plaintiffs' counsel has represented Plaintiffs since the beginning of this case. (*Id.*) This case was initially assigned to the Honorable Blanche Manning. Judge Manning referred all discovery issues to Magistrate Judge Finnegan. (Doc. 28.) Counsel

1

for the Plaintiffs and Lohmar both appeared at the initial discovery status conference in front of Judge Finnegan on November 6, 2012. (Transcript of Proceedings before the Honorable Sheila M. Finnegan on November 6, 2012, Doc. 46-1, at Ex. A.) During this conference, Lohmar informed the Court that he intended to depose both of the Plaintiffs prior to the issuance of written discovery and before the parties exchanged their Federal Rule of Civil Procedure 26(a)(1)(A) initial disclosures. With respect to Plaintiff Alcantar, Lohmar told the Court that he intended to notice the deposition to take place at the OPA Estiatorio restaurant in Vernon Hills, Illinois so that the Vernon Hills Police Department could locate Alcantar and execute an outstanding arrest warrant. (*Id.* at p. 6.)

On November 5, 2012, Defendants noticed the deposition of Plaintiff Nieves for November 12, 2012. Plaintiffs' counsel refused to produce Nieves for this deposition. On November 14, 2012, Plaintiffs' counsel sent Lohmar a letter, pursuant to Northern District of Illinois Local Rule 37.2, in an effort to meet and confer regarding the proposed scope and subjects of the deposition. (*See* Doc. 42-1 at Ex. B.) In this letter, Plaintiffs' counsel asked Lohmar: (1) to produce any documents he intended to use in the deposition at least seven days prior to the scheduled deposition date; (2) to agree to not inquire into Nieves's immigration status, tax reporting, or social security number; and (3) that Alcantar be deposed at an attorney-witness room in the Dirksen Federal Building instead of at the OPA restaurant so that the Vernon Hills Police Department could not arrest Alcantar at the deposition. (*Id.*)

On December 5, 2012, Lohmar responded to Plaintiffs' counsel and stated that: (1) the Defendants refused to produce any documents in advance of Nieves's deposition; (2) he intended to cooperate with the Vernon Hills Police Department; and (3) the deposition of Nieves would take place on December 10 because Defendants "have confirmed that Mr. Nieves is available on

December 10, 2012 and is willing to appear in our offices on that date." (Doc. 42-1 at Ex. C.) Plaintiffs' counsel again refused to produce Nieves for the deposition and moved for a protective order in this Court on January 8, 2013.

Unbeknownst to Plaintiffs' counsel, Defendant Chris Georges, Nieves's boss, called Nieves on December 10, 2012 and told Nieves to meet him in Chicago that day to assist him in moving merchandise to a new restaurant Georges was opening. (*See* Affidavit of Oswaldo Nieves, Doc. 48-1 at Ex. A, ¶ 6.)[1] John Georges, the Defendant's brother, met Nieves when he arrived. John Georges told Nieves that "you're coming with me." (*Id.* at ¶¶ 7-8.) Georges brought Nieves to Lohmar's offices. (*Id.* at ¶ 10.) Lohmar proceeded to depose Nieves without Nieves's counsel present. (*See* Transcript of December 10, 2012 Deposition of Oswaldo Nieves, Doc 48-1 at Ex. C.) Lohmar did not inform Nieves that he was entitled to counsel. (Doc. 48-1 at Ex. A, ¶ 14.) Lohmar questioned Nieves for approximately fifteen minutes. Among other things, he asked Nieves the following questions:

Where do you currently live?

Do you have a Social Security number?

Where did you live before you lived in Illinois?

What was the name of the city and state of Mexico?

Were you born and raised there?

(Doc. 48-1 at Ex. B, p. 5, ln. 18; p. 6, ln. 7; p. 7, ln. 2-3; p. 7, ln. 7.) Nieves then asked for a break. (*Id.* at p. 12, ln. 19.) As soon as the parties were back on the record, Lohmar stated:

---

[1] Defendants moved in their surreply to strike Nieves's affidavit for failing to comply with the requirements of 28 U.S.C. § 1746. After reviewing the affidavit, the Court concludes that it complies with the requirements of § 1746. It is dated, notarized, contains an original signature and contains the requisite language that Nieves "declare[d] under penalty of perjury that for [sic] foregoing is true and correct." Defendants contend that Nieves did not actually sign the document because he has used a different type of signature elsewhere. Absent additional evidence that this declaration, which was sworn to under penalty of perjury and notarized, is a forgery, the Court credits the affidavit. Importantly, the Defendants do not dispute any of the facts sworn to in the affidavit.

3

> Mr. Nieves, I had been previously advised that you did not have a lawyer in this case even though that lawyer told me that you had hired him to be your lawyer. That lawyer told me that he doesn't want the deposition to go forward today. Now that you have testified that you are represented by that lawyer, I am reluctant to continue with this deposition. So at this time, I'm going to cancel the deposition but reserve the right to recall you when I can be sure your lawyer is present to represent you.

(*Id.* at p. 12-13.) Lohmar ended the deposition at this point.

In the Defendants' response to the motion for a protective order, Lohmar concedes that he deposed Nieves without Plaintiffs' counsel present. (*See* Doc. 46 at 10 ["The only such communication between Defense Counsel and Mr. Nieves was hardly ex-parte; it was made during a deposition to which Plaintiffs' counsel was invited and specifically told that the deposition would proceed without him. It was cancelled when Mr. Nieves told Defendants' counsel that he actually had an attorney, which was different than what he had told counsel previously."].) Plaintiffs then filed a reply brief in which they amended their requested relief to include an order disqualifying Lohmar from representing the Defendants in this case due to his violation of Illinois Rule of Professional Conduct 4.2. (Doc. 48.)

The Court allowed the Defendants and Lohmar to file a surreply so that they could address the allegations raised in the Plaintiffs' reply brief. (Doc. 49.) The surreply brief concedes that Lohmar deposed Nieves without Plaintiff's counsel present but argues that such conduct did not violate Rule 4.2. (Doc. 50.) Subsequently, Lohmar filed a notice with this Court stating he intends to file a motion to withdraw as counsel for OPA and Defendants Georges. (Doc. 59.)

**DISCUSSION**

I.   **The Discovery Issues Raised in the Motion for the Protective Order**

   A.   **Legal Standard for a Motion for a Protective Order**

Federal Rule of Civil Procedure 26(b) provides that a party may "obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition and location of any books, documents, or tangible things." Relevancy is broadly defined to include "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Oppenheimer Funds, Inc. v. Sanders,* 437 U.S. 340, 351 (1978).

Despite the broad discovery rights granted by Rule 26(b), the Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). This Court maintains the discretion to determine whether a protective order is appropriate and what degree of protection is required. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). The only requirement in deciding whether or not to issue a protective order is the statutory mandate of "good cause." *See Id.* at 37. The party moving for a protective order must establish that good cause exists for the Court to exercise its discretion in entering a protective order. *See* Fed. R. Civ. P. 26(c); *see also, e.g., Kodish v. Oakbrook Terrace Fire Protection Dist.,* 235 F.R.D. 447, 449-50 (N.D. Ill. 2006). Though good cause is difficult to define in absolute terms, "it generally signifies a sound basis or legitimate need to take judicial action." *Wiggins v. Burge*, 173 F.R.D. 226, 229 (N.D. Ill. 1997) (quoting *In re Alexander Grant & Co. Litig.,* 820 F.2d 352, 356 (11th Cir. 1987)). Good cause is established by showing that disclosure will cause a clearly defined and serious injury. *See, e.g., Felling v. Knight*, No. IP 01-0571-C-T/K, 2001 WL 1782360, *2 (S.D. Ind. Dec. 21, 2001)

(Tinder, J.). Specific factual demonstrations are required to establish that a particular discovery request is improper and that good cause exists for issuing the order. *See, e.g. Felling v. Knight,* 211 F.R.D. 552, 554 (S.D. Ind. 2003) ("To establish good cause a party must submit 'a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'") (internal citations and quotations omitted).

### B. Defendants May Not Seek Discovery Regarding Plaintiff Nieves's Immigration Status

The first relief requested by Plaintiffs is for an order prohibiting the Defendants from inquiring into the immigration status of Plaintiff Nieves during his deposition or otherwise seeking discovery regarding the issue. While the Seventh Circuit has not addressed the issue, other courts in this district and elsewhere have uniformly found that the immigration status of a party is not a line of inquiry that is reasonably calculated to lead to the discovery of admissible evidence in action brought for unpaid wages under the FLSA because undocumented workers are not exempted from the definition of "employee" in the FLSA. *See, e.g., Villareal v. El Chile*, 266 F.R.D. 207, 214 (N.D. Ill. 2010) ("discovery regarding plaintiffs' immigration status is not relevant to any claim or defense" in an FLSA case); *Patel v. Quality Inn S.,* 846 F.2d 700, 702 (11th Cir. 1988) (same); *In re Reyes*, 814 F.2d 168, 170 (5th Cir. 1987) (issuing writ of mandamus directing the district court to withdraw a discovery order that required plaintiffs in FLSA case to answer questions regarding whether they were undocumented workers); *Hernandez v. City Wide Insulation of Madison, Inc.,* No. 05 C 0303, 2006 WL 3474182, at *1 (E.D. Wis. Nov. 30, 2006) (finding that plaintiffs' immigration status was irrelevant and prejudicial); *Ponce v. Tim's Time, Inc.,* No. 03 C 6123, 2006 WL 941963, at *1 (N.D. Ill. Mar. 16, 2006) (holding that immigration status was an irrelevant issue under the FLSA because "undocumented workers are 'employees' within the protection of the FLSA, every bit as much as

documented workers"); *Cortez v. Medina's Landscaping*, No. 00 C 6320, 2002 WL 31175471, at *1 (N.D. Ill. Sept. 30, 2002) (denying defendants' motion to compel discovery concerning immigration status); *see also* 29 U.S.C. 203(e)(1) (defining "employee" as "any individual employed by an employer").

Since status as an undocumented worker does not affect the ability to recover under the FLSA, this Court agrees with the reasoning of the cases cited above and sees no basis for why discovery regarding Nieves's immigration status is reasonably calculated to lead to the discovery of admissible evidence. Indeed, allowing this discovery could have a pronounced chilling effect with respect to parties filing FLSA claims because aggrieved parties would not file otherwise valid claims due to the fear of potential deportation if their employer could use discovery to determine their true status and then report it to the Immigration and Naturalization Services. *See, e.g., Flores v. Amigon*, 233 F. Supp. 2d 462, 464 (E.D.N.Y. 2002) (stating that allowing this discovery would create the "danger of intimidation, the danger of destroying the cause of action, and would inhibit plaintiffs in pursuing their rights" because plaintiffs would fear deportation if they pursue their rights). Permitting such discovery would incentivize employers to hire undocumented workers and then refuse to pay legal wages because they could quash future litigation by threatening the undocumented workers' ability to remain in the United States if they pursued any such litigation. This runs contrary to the purpose of the FLSA and should not be allowed.

Defendants do not dispute the fact that Nieves's immigration status is irrelevant; however, they argue that the Court should deny the motion as premature since no discovery has been issued on the subject. This argument is meritless. First, Rule 26(c) is designed, in part, to protect a party from harassing discovery. As a result, a party may file a motion for a protective

order in anticipation of an issue arising provided the party first complies with the meet and confer requirements of Rule 37 and this district's local rules. *See, e.g., Villareal*, 266 F.R.D. at 212-14 (entering protective order excluding immigration status from the scope of a deposition in anticipation of the issue arising at the deposition).

Second, the issue is not premature because it appears that the Defendants sought to inquire into the issue during their aborted deposition of Nieves. Defendants asked Nieves: (1) whether he has a Social Security Number; (2) how long he has lived in Illinois; (3) where he lived prior to living in Illinois; and (4) whether he was born and raised in Mexico. While Defendants did not directly ask Nieves whether he is in the United States legally, it is reasonable to infer that Defendants were trying to ascertain this information from this line of questioning. Accordingly, Defendants may not use the discovery process to inquire into the immigration status of Nieves.

## C. Defendants May Not Seek Discovery Relating to Plaintiffs' Tax Returns

The Defendants are also not permitted to inquire into whether the Plaintiffs filed tax returns with either the Internal Revenue Service or the Illinois Department of Revenue because such inquiries are generally just an alternative method to discover a plaintiff's immigration status. *See, e.g., Galaviz-Zamora v. Brady Farms, Inc.*, 230 F.R.D. 499, 503 (W.D. Mich. 2005) (granting protective order barring discovery of tax returns because such discovery requests were made for purposes of revealing plaintiff's immigration status); *Montoya v. S.C.C.P. Painting Contractors, Inc.,* 530 F. Supp. 2d 746, 749-51 (D. Md. 2008) (same); *Castillo v. Hernandez*, 10 C 247, 2011 WL 1528762, at *8-10 (W.D. Tex. Apr. 20, 2011) (same); *Sanchez v. Creekstone Farms Premium Beef, LLC*, No. 11-4037, 2011 WL 5900959 (D. Kan. Nov. 23, 2011) (same). Here, the Court does not see any basis for why the Defendants need to know the information

contained in the Plaintiffs' tax returns other than to attempt to discover Plaintiffs' immigration status. Indeed, the Defendants fail to articulate any reason for why this information is reasonably calculated to lead to the discovery of admissible evidence. Instead, they merely rehash their argument regarding prematurity. This is insufficient to establish that such discovery is warranted. *See, e.g., Vajner v. City of Lake Station,* No. 09 C 245, 2010 WL 4193030, at *2 (N.D. Ind. Oct. 18, 2010) (stating that when the relevancy of a discovery request "is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request.") (internal citations omitted). Since it appears that the Defendants would only seek this information in an attempt to uncover Plaintiffs' immigration status, they are not entitled to it.

### D. Both Parties Are Directed to Comply with Federal Rule of Civil Procedure 26(a)(1)(A)

Plaintiffs also demand that Defendants produce the documents they intend to use during the deposition of Nieves pursuant to Federal Rule of Civil Procedure 26(a)(1)(A)(ii). Rule 26(a)(1)(A)(ii) directs the parties to provide to the other party without awaiting a discovery request "a copy – or a description by category and location – of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment." Compliance is a mandatory requirement of federal civil procedure subject to certain exceptions enumerated in the Rule that are not relevant here. *See* Rule 26(a)(1)(A); *see also Robinson v. Champaign Unit 4 School District,* 412 Fed. Appx. 873, 878 (7th Cir. 2011) (noting that the initial disclosure requirements of Rule 26(a)(1)(A) are mandatory). Since neither party has complied with their obligations under the Rule, both parties are directed to do so.

However, Rule 26(a)(1)(A) does not require a party to produce specific documents. Indeed, it does not require a party to produce documents at all. *See* Rule 26(a)(1)(A)(ii) ("or a

9

description by category and location"); *see also, e.g., DE Techs. Inc. v. Dell Inc.,* 238 F.R.D. 561, 566 (W.D. Va. 2006) (noting that defendant "correctly argues that the initial disclosure required by Rule 26 does not require the production of the documents upon which a party intends to rely" because a party can provide a description by category instead). Therefore, while the Defendants have failed to comply with their initial disclosure obligations, they were not obligated to produce the specific documents under Rule 26(a)(1)(A) that they intended to use during the deposition of Nieves. If Plaintiffs wanted the specific documents that the Defendants intended to use during the deposition of Nieves, they should have sent Defendants a document request pursuant to Federal Rule of Civil Procedure 34.[2] Since Plaintiffs did not do this, the Court has no basis to order Defendants to produce these specific documents. *See* Fed. R. Civ. P. 37 (discussing when a court may compel disclosure of documents).[3]

## II. Ethical Issues Raised by Plaintiffs' Motion for a Protective Order

### A. Counsel for the Defendants Violated the United States District Court for the Northern District of Illinois's Rules of Professional Conduct

Plaintiffs contend that counsel for the Defendants violated Rule 4.2 of the Illinois Rules of Professional Conduct by deposing Plaintiff Nieves without the presence of Plaintiff's counsel. As an initial matter, Plaintiffs cite the wrong applicable rule. Northern District of Illinois Local Rule 83.50 provides that:

---

[2] In their reply brief, Plaintiffs state that they sent Defendants a request for production of documents pursuant to Rule 34 on December 7, 2012. They also allege that the Defendants have not responded to the request. However, there is no motion to compel on these requests. Even if there were, it would be improper as there is no allegation the parties have met and conferred with respect to these document requests. *See* Fed. R. Civ. P. 37(a)(1); N.D. Ill. Local Rule 37.2.

[3] Since the issue is not properly before the Court, the Court does not need to address the potential privilege issues surrounding a specific request for documents that are to be used in a deposition. *See, e.g., Sporck v. Peil,* 759 F.2d 312 (3d. Cir. 1985) (holding that an attorney's selection and ordering of documents for use in a deposition constitutes privileged attorney-work product); *but see In re San Juan Dupont Plaza Hotel Fire Litig.,* 859 F.2d 1007, 1017 (1st Cir. 1988) (holding that work product doctrine does not apply to shield exhibit list for use in an upcoming deposition from disclosure).

> Applicable disciplinary rules are the Model Rules adopted by the American Bar Association. On any matter not addressed by the ABA Model Rules or for which the ABA Model Rules are inconsistent with the Rules of Professional Conduct in the state in which the lawyer's principal office is located, any lawyer admitted to practice in Illinois is governed by the Illinois Rules of Professional Conduct; any lawyer not admitted to practice in Illinois is bound by the Rules of Professional Conduct for that state in which the lawyer's principal office is located.

N.D. Ill. Local Rule 83.50 (2011). ABA Model Rule of Professional Conduct 4.2 provides that:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

Accordingly, although the provisions are identical, the pertinent question for this Court is whether Lohmar's conduct violated ABA Model Rule 4.2 and not Illinois Rule of Professional Conduct 4.2.[4]

In their surreply brief, the Defendants effectively concede that Lohmar violated Rule 4.2. The no contact rule is designed to protect "the represented person against overreaching by adverse counsel, and reduce the likelihood that clients will disclose privileged or other information that might harm their interests." ABA Formal Op. 95-396 (1995); *see also, e.g., In re Air Crash Disaster Near Roselawn, Ind.,* 909 F. Supp. 1116, 1121 (N.D. Ill. 1995) (noting that this rule is designed to prevent parties from "making ill-considered statements or admissions") (internal citations and quotations omitted); *Parker v. Pepsi-Cola Gen. Bottlers, Inc.,* 249 F. Supp. 2d 1006, 1009-10 (N.D. Ill. 2003) (same).

An attorney may not avoid the scope of this rule "by closing [his] eyes to circumstances that make it obvious that the person to be communicated with is represented in the matter in

---

[4] Rule 4.2 of the Illinois Rules of Professional Conduct provides that "[i]n representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order." Ill. Sup. Ct. R. Prof'l Conduct 4.2 (2013).

11

question." *Parker,* 249 F. Supp. 2d at 1009 (quoting ABA Formal Op. 95-396 (1995)). Once he has notice that the opposing party is represented, the attorney must deal with the other party's attorney on all matters. *Id.* Moreover, the rule focuses on the duties of attorneys, not the rights of the parties. *See id.*; *see also United States v. Lopez,* 4 F. 3d 1455, 1462-63 (9th Cir. 1993). Therefore, this privilege may only be waived by the opposing party's attorney; the opposing party principal may not waive the no contact rule. *See, e.g., Parker,* 249 F. Supp. 2d at 1010 (citing ABA Formal Op. 95-396 (1995)).

Here, Lohmar concedes that he deposed Plaintiff Nieves for fifteen minutes without Plaintiff's counsel present. However, he asserts that he did not violate Rule 4.2 because he did not know that Nieves was represented. In support of this assertion he states that: (1) Nieves told his client, Chris George, that he was not represented; (2) the declarations signed by Nieves and attached to pleadings in the case filed by Plaintiff's counsel did not actually contain Nieves's signature; (3) the declarations were not verified by Nieves; (4) Nieves's attorney never told Nieves that he should not appear for the deposition; (5) Nieves's attorney never filed a motion to stop the deposition from commencing; and (6) Plaintiffs' counsel had previously been sanctioned for filing false affidavits. (Doc. 50. at 9.) Indeed, counsel for the Defendants states that one of his purposes in unilaterally taking Nieves's deposition was to determine whether Nieves was actually represented. (*Id.*).

Even assuming that Defendants' counsel assertions are true, he clearly did not have license to depose Nieves without the presence Plaintiffs' counsel. *See, e.g., Parker,* 249 F. Supp. 2d at 1010 (holding that attorney violated Rule 4.2 when he deposed opposing party in a separate case without the presence of counsel); *Monceret v. Bd. of Prof. Resp.,* 29 S.W. 3d 455 (Tenn. 2000) (holding that deposing party outside of presence attorney violated ethical rules despite the

fact the party consented to the deposition). It is indisputable that Defendants' counsel was aware that Plaintiffs filed this case with the assistance of Plaintiffs' counsel. It is indisputable that Defendant's Counsel was aware that Nieves's counsel appeared in court on behalf of Nieves. It is indisputable that Defendant's counsel discussed scheduling the deposition of Nieves with his counsel. This information is more than sufficient to make Defendants' counsel aware that Nieves was represented by counsel. *See* ABA Formal Op. 95-396 ("[I]f retained counsel has entered an appearance in a matter, whether civil or criminal, and remains counsel of record, with corresponding responsibilities, the communicating lawyer may not communicate with the person until the lawyer has withdrawn her appearance."); *see also, e.g., Parker,* 249 F. Supp. 2d at 1009 (stating that counsel cannot close his eyes to the obvious that a party is represented)

Indeed, even if Defendants' counsel's doubts were reasonable (and the Court does not believe they are), Defendants' counsel should have brought his concerns to the attention of the Court, not to engage in self-help by seeking to depose the Plaintiff without the presence of counsel. *See, e.g., McClelland v. Blazin Wings, Inc.,* 675 F. Supp. 2d 1074, 1078 (D. Colo. 2009) (holding that attorney violated the analogous Rule 4.2 of the Colorado Rules of Professional Responsibility when he contacted opposing party through an investigator before clarifying whether plaintiff's counsel in a separate case extended to the instant case); ABA Formal Op. 95-396 (noting that an attorney should seek court approval before communicating with a party who may be represented by counsel). Such a course of action is patently improper. Therefore, the Court finds that Defendants' Counsel violated Rule 4.2.

### B. Counsel for the Defendants Did Not Violate Illinois Supreme Court Rule of Professional Conduct 8.4(g)

Plaintiffs also contend that Lohmar violated Rule 8.4 of the Illinois Rules of Professional Responsibility[5] by stating to the Court during the November 5, 2012 initial discovery status hearing that he intended to schedule the deposition of Plaintiff Alcantar so that the Vernon Hills Police Department could execute an outstanding warrant and arrest Alcantar. Illinois Supreme Court Rule of Professional Responsibility 8.4(g) provides that it is professional misconduct for an attorney to "present, participate in presenting, or threaten to present criminal or professional disciplinary charges to obtain an advantage in a civil matter." At the initial discovery conference, Lohmar told Judge Finnegan that the Vernon Hills Police Department asked him to schedule the deposition of Plaintiff Alcantar at the OPA restaurant so that they could arrest Alcantar when he showed up to the restaurant. Lohmar also indicated that he intended to comply with the Vernon Hills Police Department's request. In addition, Lohmar told Judge Finnegan that if Alcantar failed to appear for his deposition, the Defendants would move to dismiss Alcantar as a plaintiff.

While Lohmar certainly threatened to use Alcantar's legal situation to the advantage of the Defendants, he did not present, participate in presenting, or threaten to present criminal charges in this case. Independent, pending charges already existed against Alcantar at the time Lohmar made this statement to Judge Finnegan. There is no allegation or evidence that Lohmar was involved in filing the charges against Alcantar. There is no allegation that Lohmar threatened to file additional charges against Alcantar. While Lohmar stated that he intended to

---

[5] While the ABA has issued a formal opinion that this conduct could violate the Model Rules, *see* ABA Formal Opinion 92-367 (1992), there is no ABA Model Rule that specifically prohibits this conduct. However, this Court has the power to hold Lohmar accountable for violating the Illinois Rules of Professional Responsibility. *See* N.D. Ill. Local Rule 83.50; *In re Snyder,* 472 U.S. 634, 645 n. 6 (1985) (holding that a federal court can charge attorneys with knowledge of, and hold them accountable to, state ethics rules in the state where the court sits).

assist the police department in facilitating Alcantar's arrest and intended to use the threat of the pending arrest to his advantage by moving to dismiss Alcantar if Alcantar did not show for his deposition, these actions do not implicate the Rule because Alcantar had already been charged by the Vernon Hills Police Department. Therefore, since Lohmar did not present, participate in presenting, or threaten to present criminal charges, he did not violate the Rule.

Plaintiffs' reliance on *Boswell v. Gumbaytay* is misplaced. There the court found that defendant's counsel violated the analogous Alabama Rule of Professional Responsibility when he attempted "to coerce enforcement of the alleged '3 outstanding warrants for assault and drugs' against the defendant." *Boswell v. Gumbaytay,* No. 07 C 135, 2009 WL 1515884, at *7 (M.D. Ala. June 1, 2009). However, in attempting to coerce the enforcement of the warrants, the defendant's counsel threatened plaintiff's counsel with charges of aiding and abetting and obstruction of justice. *See id* at *4. (quoting e-mail from defendant's counsel to plaintiff's counsel that stated that "[y]our client Bosewll [sic] has 3 outstanding warrants for assault and drugs you are hereby notified that if your client is not prosceuted [sic] and or turned in immeadiatly [sic] you will be charged with aiding and abetting, compounding and obstruction. Yours Truly, Al Newell."). Therefore, the attorney in *Boswell* violated the rule by threatening plaintiff's counsel with the imposition of criminal charges for aiding and abetting and obstruction of justice, not by facilitating the execution of an outstanding warrant. Therefore, the Court concludes that Lohmar did not violate Rule 8.4(g).

### III. The Remedy

In their motion for a protective order and in their reply brief in support of their motion for protective order, Plaintiffs request a wide range of relief. As described above, the Defendants are barred from seeking any discovery relating to Plaintiffs' immigration status and tax returns.

15

Second, the Defendants are barred from using Nieves's December 10, 2012 deposition testimony or any evidence obtained therefrom in the present litigation. Defendants and their counsel are further ordered to destroy any copies of the deposition in any format, as well as any summaries or analyses of the deposition prepared by counsel or at his request. The Defendants must certify to this Court that it has done so by June 12, 2013. *See, e.g., Parker,* 249 F. Supp. 2d at 1013 (barring defendants from using testimony from deposition taken outside of counsel's presence and ordering destruction of all materials related to the deposition).

However, the Defendants may depose both Plaintiffs in the future provided that the depositions occur at a mutually agreed upon location and are subject to all the limitations set forth in the Rules of Civil Procedure. Additionally, Defendants may not inquire into the Plaintiffs' immigration status or ask about Plaintiffs' tax returns during the depositions. *See id.* (allowing defendant to depose plaintiff in the future, subject to certain restrictions, after taking plaintiff's deposition without counsel present).

Defendants are ordered to pay Plaintiffs' reasonable attorneys' fees and costs incurred in the preparation of filing this motion. *See* Fed. R. Civ. P. 37(a)(5). Plaintiffs must submit a fee petition and supporting affidavit no later than fourteen days from the date of the entry of this Order.

Both parties are also ordered to comply with the initial disclosure requirements set forth in Rule 26(a)(1)(A). The parties shall exchange their initial disclosures within seven days of the entry of this Order.

Finally, since Lohmar has represented to the Court that he intends to move for leave to withdraw from the case, the Court finds that the request for disqualification is moot.

## **CONCLUSION**

For the reasons set forth above, the Court grants the Plaintiffs' Motion for Protective Order in part and denies it in part.

```
                                          _____
                                          Virginia M. Kendall
                                          United States District Court Judge
                                          Northern District of Illinois
```

Dated: June 4, 2013